Culver v. Haslam.

———————•◦•———————

SAME TERM. *Before the same Justices.*

## CULVER *vs.* HASLAM.

*So..  .. ..  .. ..  ..  .. ..  .. ..  .. ..  .. ..*

On a question as to the mental capacity of the grantor of a deed, the opinion of an intimate acquaintance, not a medical man, as to the condition of the grantor's mind, is *competent* when connected with facts and circumstances within his knowledge, and disclosed by him in his testimony, as the foundation of his opinion. HAND, J. dissented.

The value and force of the opinion depend on the general intelligence of the witness; the grounds on which it is based; the opportunities he has had for accurate or full observation; and his entire freedom from interest and bias.

Other cases where opinions are admissible, stated and explained.

The *general* rule is that witnesses must speak to *facts*, and that mere *opinions* are inadmissible.

THIS was an action of ejectment, brought to recover the possession of part of lot No. 12 of the second division of the Cambridge patent; and was tried at the Washington circuit, in February, 1849, before Justice PAIGE. The plaintiff derived title

Culver *v.* Haslam.

under a deed from Polly Barnhart, the owner of the lot, dated June 2d, 1847, conveying the premises in fee to one Stearns, by whom they were conveyed to the plaintiff. The defendant defended under the heirs of the said Polly Barnhart, who died subsequent to the making the deed of the 2d June, 1847; and the question litigated on the trial was whether Polly Barnhart, at the time she executed the deed of the 2d June, 1847, under which the plaintiff claimed, was of unsound mind and incapable of making the said deed, or not. On the trial, the counsel for the plaintiff introduced a witness who testified that he had been a merchant, and was then a farmer; that he had been acquainted with Polly Barnhart for seven years previous to the date of the said deed, and until her death; that he had transacted business with her, and that in 1843 he presented an account against her, for about four dollars, and could not make her understand any thing about it; that previous to that time he had dealings with her, and she fully understood the accounts which he presented to her. The defendant's counsel then asked the witness " whether, from her appearance at the time he presented the last account, and from the facts and circumstances within his knowledge, which took place at the time, Polly Barnhart was at that time, in his opinion, incapable of transacting business by reason of the unsoundness of her mind and her want of mental capacity." This was objected to by the plaintiff's counsel as incompetent, on the ground that the opinions of witnesses other than medical men and experts, are not admissible evidence to prove insanity or a want of mental capacity to transact business, and insisted that witnesses other than medical men and experts could only speak of the circumstances and acts, and state the facts within their knowledge in relation to Polly Barnhart, and let the jury, from such evidence, draw their conclusions in relation to her mental capacity.

The judge decided that the opinions of witnesses other than medical men and experts, in relation to the insanity of Polly Barnhart, or her mental capacity to transact business, were competent evidence, if founded on facts and circumstances within their own personal knowledge, and which they should testify to

and give in evidence as the foundation of such opinions, and that the witness might give his opinions in evidence to the jury on that subject, if founded upon facts and circumstances within his own personal knowledge, in connection with such facts and circumstances to be testified to by him as the foundation of such opinion.    To which opinion the plaintiff's counsel excepted. The witness thereupon answered the question "that from his acquaintance with Polly Barnhart, and from his personal knowledge of her and her acts, he was of opinion that she was not capable of transacting business understandingly at the time he presented his last account to her." Under the same decision other witnesses, not medical gentlemen, were examined, but were allowed to speak their opinions from and at the time of the occurrences of facts within their knowledge, and to which they testified before they expressed their opinions. Other testimony was given in the case, on both sides, as to the mental capacity of the said Polly.    The learned judge, in charging the jury, remarked, among other things, that the opinions of the witnesses who were not professional men, were entitled to very little weight, and that such opinions were only admissible as being founded on facts within the knowledge of such witnesses, and in connection with the evidence of such facts.    The plaintiff's counsel excepted to the charge.    The jury found a verdict for the defendant; and a motion was made by the plaintiff for a new trial, on a bill of exceptions.

*L. J. Howe,* for the plaintiff.    The opinion of witnesses, other than professional men and experts, are incompetent evidence to prove lunacy or insanity.    The only legal evidence on such subjects, except in cases of witnesses to a will or on questions of science and skill, consists of the acts and declarations of the party, evincing a want of capacity.    It is for the court and jury, not the witnesses, to form opinions from the facts.    The witnesses must give the facts only, and the court or jury must give the judgment.    (*Sears* v. *Shafer,* 1 *Barb. S. C. Rep.* 408, 411, 412.)    People entertain opinions on almost every subject that comes before a court of justice, some on one side and some on

the other; and if one man's opinion is evidence, every one's is so. But the jury is to keep together in order to exclude all mere opinions, and to decide on the merits, according to their own opinions founded on the facts in evidence, and not on the opinions of other persons. "Mental capacity," and "disposing mind," and "unsound mind," are legal terms, and have a legal definition, with which witnesses are not acquainted, and which they are not to state. But they must state the party's degree of intelligence or imbecility, in the best way they can, so as to impart to the court and jury a knowledge of the meaning of the witness, that they may decide what was the party's state of mind and capacity. (*Cowen & Hill's Notes,* 759.) On the next page the author cites some cases of the states where a different rule seems to be practiced; but he dissents from regarding them as authority in this state, and says, "these cases are too anomalous to be relied upon." (*Cowen & Hill's Notes,* 760. *Stark. Ev.* 1735, 6. *Phil. Ev.* 290. 4 *Denio,* 370, 373, 374, 311, 318. 17 *Wend.* 136, 161. 23 *Id.* 354.) The witnesses whose opinions were received as evidence in this case, had no means of knowledge on the subject, beyond the range of the jury. (1 *Paige,* 173, 4. 1 *Denio,* 374. 1 *Greenl. Ev. p.* 543, § 440.) A person of "sound mind" can convey real estate. The terms "unsound mind" are legal terms, and have a determinate legal signification, importing not merely debility of mind, but a total deprivation of reason. (26 *Wend.* 300, 301.) What did the witnesses in this case know of the meaning of those scientific terms? And what did they know of the philosophy of the mind; or how much legal capacity the party had; or how much it was necessary she should possess to render her legally competent to transact business?

*C. L. Allen,* for the defendant. I. The only question in this case is, whether the judge decided correctly in admitting the evidence of the opinion of witnesses as to the sanity of Polly Barnhart, at the time she executed the deed to Stearns, on 2d June, 1847. He confined the witnesses to *facts* within their own knowledge, and acts and circumstances which they had

witnessed, and to which they had testified, and he required them to found their opinion on such facts and circumstances alone. In this he decided correctly. It is undoubtedly true, as a general rule, and will not be disputed, that the opinions of witnesses, other than medical men, are not admissible in evidence to prove insanity or a want of mental capacity to transact business, when their opinions are founded on facts at large, or on the testimony of other witnesses. But when such opinions are based on facts within the knowledge of the witness, and to which he has testified, and he speaks from those facts alone, it has ever been held in this state, down to within a very recent period, that such testimony is proper. See authorities hereafter cited. It has also been so held in other states. On trying a defence to a promissory note in Connecticut, on a question of lunacy, *witnesses, not professional,* were allowed to state their opinions, though held these must be given in connection with the facts on which they were formed. (*Grant* v. *Thompson,* 4 *Conn. R.* 203, 208, 9. *Cowen & Hill's Notes, part* 1, 760.) The court rely on Swift's evidence, who makes *sanity* an exception to the general rule. He says "the *testimony of witnesses on this subject* will generally be *in the shape of an opinion. But, they must detail the facts.*" So in Pennsylvania, where the witnesses spoke from *actual knowledge of the testator.* (*Wogan* v. *Small,* 11 *Serg. & Rawle,* 141.) The court allowed the broad question to be put, "*Did you think the testator fit or unfit to make a will?*" In the same state it was held that *facts,* and *opinions* of sanity founded on them, may as to a testator, be received from any of his acquaintances. (*Rambler* v. *Tryon,* 7 *Serg. & Rawle,* 90.) The same has also been virtually held in Massachusetts. (*Hathorn* v. *King,* 8 *Mass. R.* 371.) In Vermont, too, the court say " Testimony of opinion may be given, where, from the general and indefinite nature of the inquiry, it is not susceptible of direct proof. Thus, upon a question of insanity, witnesses not professional men, may be permitted to give their opinion in connection with the facts observed by them. But this evidence is always confined to those who have observed the facts, and is never permitted where the opinion of the witness is derived from

Culver *v.* Haslam.

the representation of others." Upon a question of insanity, for instance, witnesses who have observed the conduct of the patient, and been acquainted with his conversation, may testify to his acts and sayings, and give the result of the observation. (*Lester* v. *Town of Pittsford*, 7 *Verm. R.* 158, 161.) In England too, in *Lowe* v. *Joliffe*, (1 *W. Black. R.* 365,) opinions of witnesses as to sanity were taken on both sides. But where mere opinion is required upon a given state of facts, that opinion is to be derived from professional men. For instance, an offer to prove by witnesses on a given state of facts that in their opinion a road was unsafe, such evidence would undoubtedly be improper. But without resorting farther to other states, let us come down to our own. The leading case is *Jackson* v. *King*, (4 *Cowen*, 207.) There the *opinion* of witnesses was received, and the propriety of the evidence does not seem even to have been questioned. The court say, p. 218, the opinion of the witnesses seems based on specific facts, which do not warrant an opinion to that extent. In *Clark* v. *Fisher*, (1 *Paige's Ch. R.* 171,) after speaking of the general principles of law in relation to the capacity of a person to make a will, the chancellor remarks : "That the great difficulty which generally exists, is, in applying those principles to the testimony in each particular case. The evidence of capacity on which the court or jury are to decide, in most contested cases, consists in the opinions of witnesses, sometimes *with*, but frequently *without*, the particular facts on which such opinions are founded." No objection was taken to the *opinions* of the witnesses being given in evidence. This case is analogous to the case of *McKee* v. *Nelson*, (4 *Cowen*, 356.) Action for breach of promise of marriage ; offer to prove opinions of witnesses, grounded on the plaintiff's deportment, &c. that plaintiff was sincerely attached to defendant. The court say, "It is true, as a general rule, that witnesses are not allowed to give their opinions, but there are exceptions, and we think this one of them. There are a thousand nameless things indicating the existence and degree of the *tender passion*, which language can not specify. The opinions of witnesses on this subject must be derived from a series of in-

Culver *v.* Haslam.

stances passing under their observation, which, yet, they never could detail to a jury. So in cases of insanity; how could witnesses detail the particular manner, acts, position, gestures, and a thousand nameless things which they would witness, and the cause of which would be perfectly manifest? In general the opinion of a witness is not evidence for a jury, though there are exceptions. But they proceed on the principle that the question is one of science or skill, or has reference to some subject upon which the jury are supposed not to have the same degree of knowledge with the witness. (*Lamoure* v. *Caryl*, 4 *Denio*, 370, 373.) In the case of *The People* v. *Freeman*, (4 *Denio*, 9,) several professional and other witnesses who had seen and known the prisoner, and conversed with him, severally gave their opinions that he was sane. This testimony was commented upon by counsel on both sides and by the judge, who remarked that the opinions of the witnesses, not medical men, though proper, were not entitled to as much weight as those of professional men, or those who had been the attendants and close observers of the prisoner. The case of *Norman* v. *Wells*, (17 *Wend.* 136,) relied upon on the other side, is in fact an authority for the defendant. It decides that opinions of witnesses on probable amount of damages are inadmissible. Cowen, Judge, p. 163, says, "I know that in questions of insanity some courts allow witnesses to throw in their opinions from what they have seen and heard, and so in cases of breach of promise of marriage, and as to the state of the affections in actions for criminal conversation. But the witnesses are only allowed to speak from facts within their own knowledge, (*Trelawny* v. *Colman*, 2 *Starkie*, 191,) and they should be confined to that. *Sears* v. *Shafer*, (1 *Barb. S. C. R.* 408,) will also be relied on by plaintiff. That case records the simple *dictum* of Judge Barculo, sitting alone, and citing Cowen and Hill's Notes, 759, which do not bear him out; and he remarks, that the witnesses have very freely given their opinions, *in many instances without stating a single fact to sustain them.*

II. The court having correctly charged the jury, that the opinions of the witnesses, confined as they were to facts with-

Culver *v.* Haslam.

in their own knowledge, were entitled to very little weight, and having fully and fairly commented on all the testimony, the plaintiff has sustained no injury. The charge was not even excepted to. The motion for a new trial should therefore be denied and judgment be rendered for defendant on the verdict. It is at most only a question of costs, as the plaintiff can have a new trial under the statute, on payment of costs. And if he chooses to do so, he ought pay costs for the privilege.

WILLARD, J. The general rule, no doubt, is, that witnesses must speak to facts, and that mere opinions are not admissible. (1 *Phil. Ev.* 290. 1 *Greenl. Ev.* 593, § 450. *Cowen & Hill's Notes to Phil. Ev.* 759. *Sears* v. *Shafer,* 1 *Barb. S. C. Rep.* 408.) There are, however, numerous exceptions to the rule, most of which will be found stated in the authors above cited. On the present occasion it becomes important only to inquire, whether the questions proposed to, and answered by, the witnesses, and the charge of the learned judge, fall within the exceptions.

The cases in which the mental capacity of a party becomes a subject of judicial investigation, arise, most frequently, upon wills. The practice in these cases, in the English ecclesiastical courts having jurisdiction in testamentary matters, has been long well settled. In *Sheaff* v. *Rowe,* (2 *Lee,* 180,) decided in 1757, it was held that the opinions of doctors and apothecaries concerning a man's capacity, from the nature of his disorder, were good evidence, and that other witnesses must set forth particular facts and expressions to show insanity; otherwise their evidence would have no weight. The general principles which influence the court are fully stated by Sir John Nicholl in the well considered case of *Kinleside* v. *Harrison,* (2 *Phillim. Rep.* 449.) In assigning the reason for the great amount of contradictory evidence, in the causes in those courts, he remarks that a large portion of *evidence to capacity is evidence of mere opinion ;* and upon matters of opinion mankind differ, even to a proverb. He then proceeds to show how these opinions are to be estimated ; a point not material on the mere

Culver *v.* Haslam.

question of *admissibility.* The case of *Wheeler* v. *Alderson,* (3 *Hagg.* 574,) affords further illustration of the manner in which the opinions of witnesses are received in such cases.

The opinions of medical men are admissible in evidence, though the witness founds them not on his own personal observation, but on the case itself, as proved by other witnesses on the trial. They can not, however, be permitted to give their opinions as to the general merits of the cause, but only their opinions on the facts proved. (*Jameson* v. *Drinkald,* 12 *Moore,* 148. *Rex* v. *Wright,* 1 *Russ. & Ryan,* 456.) The witness is not to take the place of the jury.

The books make a distinction also, between the *subscribing witnesses* to a will and other witnesses called to the question of testamentary capacity; holding that the former may testify to their *opinions,* in respect to the sanity of the testator at the time of executing the will, and that the latter must speak only as to facts; for the law has placed the subscribing witnesses about the testator to ascertain and judge of his capacity. (4 *Greenl. Ev.* 595, § 440.) In the neighboring states the rule seems to be well established, that on questions of sanity, any witness may give his opinion, in connection with facts within his own knowledge, and which must first be disclosed in his testimony. But when mere opinion is required upon a given state of facts, that opinion must be derived from professional men. (*See Chase* v. *Lincoln,* 8 *Mass. Rep.* 237 ; *Poole* v. *Richardson, Id.* 330; *Rambler* v. *Tryon,* 7 *Serg & Rawle,* 90, 92 ; *Buckminster* v. *Perry,* 4 *Mass. Rep.* 593 ; *Grant* v. *Thompson,* 4 *Conn. Rep.* 203 ; *Kinne* v. *Kinne,* 9 *Id.* 102 ; *Doe* v. *Reagan,* 5 *Blackf.* 217.) When from the general and indefinite nature of the inquiry it is not susceptible of direct proof, testimony of opinion is admissible ; provided that opinion is formed on particular facts within the knowledge and observation of the witness, and disclosed by him in his testimony. (*Clary* v. *Clary,* 2 *Iredell,* 78. *Lester* v. *Town of Pittsford,* 7 *Verm. Rep.* 158, 161. 17 *Id.* 499. *Gibson* v. *Gibson,* 9 *Yerger,* 329.)

The same doctrine will be found in our own reports. Thus, in *Jackson* v. *King,* (4 *Cowen,* 207, 218,) although the testi-

mony is not given at large, it is obvious from the opinion of the court, as delivered by Woodworth J. at page 218, that the opinions of the witnesses on both sides of the question were received without objection. While the learned judge gives credit to those witnesses who pronounced the grantor, in their opinion, of sound mind, he observes that the *opinions* of the other witnesses impeaching his capacity rested on specific facts, which did not warrant the opinion, to that extent. In *Clark* v. *Fisher*, (1 *Paige*, 171, 173,) which was an appeal from a surrogate in admitting a will to probate which had been opposed on the ground of the testator's mental incapacity, the chancellor, after stating the principles of law in relation to the capacity requisite to the validity of a will, remarks, that this evidence of capacity on which the court or jury is to decide, in most contested cases, consists in the *opinions of witnesses* sometimes with, but frequently *without* the particular facts on which such opinions are founded. Such testimony, he observes, is always the most unsatisfactory, and the least to be depended on. And further on, he observes, " that the opinions of witnesses are never received as evidence when all the facts on which such opinions are founded can be ascertained and made intelligible to the court or jury. And when the opinions of witnesses, from the necessity of the case, are received as evidence, the weight of testimony will not depend so much upon the number, as upon the intelligence of the witnesses, and their capacity to form correct opinions, their means of information, the unprejudiced state of their minds, and the nature of the facts testified to, in support of those opinions."

In *Norman* v. *Wells*, (17 *Wend.* 137, 163,) Mr. Justice Cowen, after repudiating the admissibility of *opinions*, on mere questions of damages, concedes that in questions of insanity, some courts allow witnesses to throw in their opinions, from what they have seen and heard. But he observes that he always found that such cases were better tried, when opinions were kept entirely out of view; and that he generally excluded them, except when they came from professional men. And he further on remarks, that the witness who is allowed to give his opinion

Culver *v.* Haslam.

must be *confined to facts within his own knowledge and his own actual observation.*

In the case of *Stewart's Executors* v. *Lispenard,* (26 *Wend.* 255,) it appears by the surrogate's return on the appeal that the opinions of the witnesses were repeatedly given as to the capacity of the testatrix. With respect to their opinions, the surrogate says, (see page 264) "mere opinion or general statements, not instructed with facts and circumstances, are entitled to little weight or consideration;" and the chancellor at page 291 concurs with the surrogate in substance, in that respect. Although the decree of the surrogate and of the chancellor was reversed by the court of errors, it was upon a point not affecting the question of admissibility of opinions as evidence in cases of that nature; but on the contrary, Verplanck, senator, who delivered the prevailing opinion of the court of errors, at pages 308–9, treats the evidence of opinion not only of the subscribing witnesses, but of the other witnesses, as admissible, agreeing with Washington, J. in 3 *Wash C. C. R.* 58, that "mere opinions of witnesses, as to mental capacity are entitled to little or no regard, unless supported by good reasons, founded on facts which warrant them." The case of *Fish* v. *Dodge,* (4 *Denio,* 312, 318,) and of *Lamoure* v. *Caryl,* (*Id.* 370, 374,) merely show that on questions of damages, opinions of witnesses are inadmissible, and the reason assigned by Justice Beardsley, in the latter case, shows the propriety of questions of insanity being an exception to the general rule.

The recent case of *Sears* v. *Shafer,* (1 *Barb. S. C. Rep.* 408,) before Barculo, J. at special term, is not in conflict with these principles. The learned judge states the general rule truly, that it is for the court and not the witness to form an *opinion* from the facts. He correctly makes the exception in case of the subscribing witnesses to a will, who are allowed to express their opinions; and, by implication, he sanctions the other exception, which allows witnesses to express their opinion as to the capacity of the testator, in connection with facts and circumstances within their knowledge, disclosed by them on the trial. He says, "in this case, the witnesses have very freely given their

*opinions* on this subject, [the testator's capacity,] in many instances without stating *a single fact to sustain them.    All such testimony must be disregarded.*" &c.    Apart from the difficulty of restraining a witness from intermingling his opinions with his testimony, in questions of this kind, there are strong reasons why he should be permitted to do so, when he discloses the facts and circumstances within his own knowledge, upon which they are founded.    Human language is imperfect ; and it is often impossible to describe, in an intelligible manner, the operations of the mind of another.    We learn its condition, only by its manifestations, and these are indicated not alone by articulate words, but by signs, gestures, conduct, the expression of the countenance, and the whole action of the man.    Nor is there any danger that a court and jury will be misled by such opinions, when the reasons for them are disclosed.    The value and force of the opinion depend on the general intelligence of the witness, the grounds on which it is based, the opportunities he has had for accurate and full observation, and his entire freedom from interest and bias.    I agree with Judge Cowen in *Norman* v. *Wells*, that causes are in general better tried without them, and I concur with him, the chancellor, Senator Verplanck and Judge Barculo, that mere opinions, of an ordinary witness, unless supported by good reasons, and founded on facts, are entitled to no regard.    The question under consideration is, not what *weight* should be given to such opinions, but whether they were *competent*.    The learned judge correctly instructed the jury that they were entitled to but *little weight*.    I think he was right also, in holding them *admissible*, with the qualifications under which they were received.

There are other exceptions to the general rule with respect to the competency of opinions, which, if fully examined, would throw light on the principal question.    On questions of science, skill, or trade, or others of the like kind, persons of skill, sometimes called *experts*, may not only testify to facts, but are permitted to give their opinions in evidence.    The opinions of medical men are constantly admitted on subjects within the range of their profession ; and the same is true of ship builders,

Culver *v.* Haslam.

nautical men,(*a*) engineers, &c. Practical surveyors have invariably been permitted, at the circuit, to express their opinions whether the marks on trees, piles of stone, &c. were intended as monuments or boundaries,(*b*) whether a particular mark indicated a corner, or was a mere witness; whether a given line was an ancient or a recent line; and whether it was a surveyor's line, or one marked by hunters. So also opinions and belief have always been received in cases of personal identity, hand-writing, counterfeiting coin, bank bills and the like.(*c*) But in all these cases the requisite foundation for the opinion must be laid, by showing that the witness had some knowledge of the subject. Thus a witness can not be permitted to give his opinion as to the genuineness of hand-writing, unless he has before seen the party write, or corresponded with him, or otherwise become acquainted with his genuine signature. The character of this kind of evidence differs almost infinitely in degree. (*Wilson* v. *Kirkland,* 5 *Hill,* 182. 21 *Wend.* 557. *Murphy* v. *Hagerman, Wright,* 293. 4 *Dev. & Batt.* 236. 4 *Hill,* 129. 17 *Vt.* 499. 1 *Denio,* 281. 11 *N. H.* 557. 2 *Metc.* 147. 4 *Blackf.* 293. 5 *Id.* 217. 3 *Dana,* 382, *as to identity of a party.* 4 *Wend.* 320. 3 *Fairf.* 222. 6 *Conn. Rep.* 9, *as to age; opinion admissible, giving facts.* 4 *Cowen,* 355, *as to the seniority of an attachment, from facts. Cutler* v. *Carpenter,* 1. *Cowen,* 81, *shows that a witness can not swear to belief, when such belief is not based upon facts.* 1 *John.* 96, *when a witness may give his impression.*) But it is unnecessary to enlarge upon the subject.

The testimony was properly received, and the motion for a new trial should be denied.

(*a*) 1 *Carr. & Payne,* 70.

(*b*) 4 *Pick.* 156. 10 *Barn. & Cress.* 527.

(*c*) Also as to the value of property. (*Swift's Ev.* 111. *Kellogg* v. *Kramer,* 14 *Serg. & Rawle,* 137. But see *Rochester* v. *Chester,* (3 *N. Hamp. Rep.* 349, 365, *contra.*) In *Morse* v. *The State of Connecticut,* (6 *Conn. Rep.* 9,) mere naked opinion as to the age of a party, from his appearance only, was rejected. But the court thought that if the witness had stated the facts indicative of age, and then followed with an opinion, that would have been admissible.

Culver *v.* Haslam.

PAIGE, P. J. concurred.

HAND, J. The defence in this case was the insanity or mental incapacity of the grantor in the deed under which the plaintiff claimed. The defendant offered to prove by a witness who was a farmer, and had been a merchant, that from the grantor's appearance at the time he presented a certain account against her, about four years before the deed was executed, and from facts and circumstances within his knowledge, which took place at the time, she was in his opinion at that time incapable of transacting business by reason of the unsoundness of her mind and the want of mental capacity; and also offered to give in evidence the opinions of other witnesses, not medical men or experts, in relation to her mental capacity to transact business, founded on circumstances and acts of the grantor within their own personal knowledge, which they had heard and witnessed, and to which they could testify. The judge decided that the opinions of witnesses, other than medical men and experts, in relation to the insanity of the grantor, or her mental capacity to transact business, were competent evidence, if founded on facts and circumstances within their own personal knowledge, and which they should testify to and give in evidence as the foundation of such opinions, and that this witness and others, other than professional men and experts, might give their opinions in evidence to the jury on that subject, if founded upon facts and circumstances within their own personal observation, in connection with facts and circumstances to be testified to by other witnesses. The counsel for the plaintiff excepted. The judge, in charging the jury, told them that the opinions of witnesses not professional men were entitled to but very little weight, and were only admissible as being founded on facts within the knowledge of each witness, and in connection with the evidence of such facts. Still, if the testimony was inadmissible there should be a new trial.

The rule, as laid down at the circuit, is found in so many *dicta*, that it was perhaps natural that a judge at *nisi prius* should feel constrained to follow it. But after some examina-

Culver *v.* Haslam.

tion, I have not been able to find principle or authority to sustain it. In this case, not only were the witnesses allowed to give their opinions of the state of mind of the grantor, but also as to her mental capacity to transact business, judging from facts and circumstances within their own knowledge and to which they should testify, as the foundation of such opinions. They are first to testify to the facts and circumstances, and then draw conclusions from them as to the insanity and business capacity of the grantor. If the opinion of a witness in such cases were at all admissible, I doubt the propriety of asking him whether the party was capable of transacting business; or, which is the same thing, of making the deed. This is giving an opinion upon the merits, and swearing to a verdict. That can not be done, even by a scientific man. (*Jameson* v. *Drinkald*, 12 *Moore*, 148. *Walton* v. *Nesbit*, 1 *Car. & Payne*, 70. *Sills* v. *Brown*, 9 *Id.* 601. *Jefferson. Ins. Co.* v. *Cotheal*, 7 *Wend.* 77, 78, 79. 1 *Greenl. Ev.* § 440. *Cowen & Hill's Notes*, 759.)

But I think the opinions of witnesses, not experts, were inadmissible altogether. The general rule is, that witnesses are to state facts, and not opinions. There are exceptions; as on questions of science and trade, persons of skill may give opinions. (1 *Phil. Ev.* 290. 1 *Stark. Ev.* 54. 1 *Greenl.* § 440. *Norman* v. *Wells*, 17 *Wend.* 136. *Paige* v. *Hazard*, 5 *Hill*, 603. *Butler* v. *Benson*, 1 *Barb. S. C. Rep.* 537.) This being the general rule, and having its foundation in reason, all exceptions should stand upon principle or by authority. I have not been able to find authority in support of the one contended for. In a few cases in this state such testimony has been received; but in none of them was any objection made. Nearly all of them originated before a surrogate, and the appellate courts had to pass upon the cases as they found them. Such a rule seems to have obtained, under certain restrictions, in Massachusetts, Connecticut, Pennsylvania and Ohio. (*Pool* v. *Richardson*, 3 *Mass. Rep.* 330. *Grant* v. *Thompson*, 4 *Conn. Rep.* 203. *Wogan* v. *Small*, 11 *Serg. & Rawle*, 141. *Clark* v. *State*, 12

---

Culver *v.* Haslam.

---

*Ohio Rep.* 483.) In *Jackson* v. *King,* (4 *Cowen,* 207,) the opinions of witnesses were given, but the case does not show what were their qualifications, nor that any objection was taken; nor was the point noticed by the court. The same remark is applicable to *Clark* v. *Fisher,* which first arose in a surrogate's court. (1 *Paige,* 173.) The chancellor says, "the evidence of capacity, on which the court or jury are to decide, in most contested cases, consists in the opinions of witnesses ; sometimes with, but frequently without the particular facts on which such opinions are founded." He could hardly have used this language in reference to persons without skill ; for no one contends, I believe, that such persons can give opinions upon the question of insanity, without stating the facts. In the English ecclesiastical courts opinions are sometimes given, but the common law rule, I think clearly different.

But again ; whenever such testimony has been received, it has always been very little regarded. Sir John Nicholl, in *Kinleside* v. *Harrison,* (2 *Phill.* 449,) said, in reference to the testimony given in that case, in which the depositions, as he stated, contained one of the largest bodies of evidence ever exhibited in those courts, that "it was necessary for the court to weigh such evidence with very great attention ; to rely but little upon mere opinion ; to look to the grounds upon which opinions were formed ; and to be guided in its own judgment by facts proved or by acts done, rather than by the judgment of others." This he repeated in *Evans* v. *Knight,* (1 *Addams,* 229,) "There is produced," said he again, "a cloud of witnesses who gave unhesitating opinions that the deceased was mad; but their opinions are of little weight;" and he established the will. (*Wheeler* v. *Alderson,* 3 *Hagg.* 574.) In *Jackson* v. *King,* the court looked to the facts, and disregarded opinions; and set aside the verdict. (4 *Cowen,* 207.) In *Clark* v. *Fisher,* Chancellor Walworth considered such testimony as the most unsatisfactory and the least to be depended upon. And he observes that the opinions of witnesses are never received as evidence where all the facts on which such opinions are founded can be ascertained

Vol. VII.　　　　　　42

Culver v. Haslam.

and made intelligible to the court or jury, and that where from necessity opinions are received, the weight of testimony depends not so much on the number as upon the intelligence of the witnesses, their capacity to form correct opinions, their means of information, the unprejudiced state of their minds, and the nature of the facts testified to in support of those opinions. (1 *Paige*, 173, 4.) And see the opinions delivered in *Stewart's Ex'rs* v. *Lispenard*, (26 *Wend.* 253.) Thus we see, this kind of testimony, when admitted, is held in low esteem, amounting practically to a rejection; for what is disregarded, is substantially rejected; and yet may have an influence with the jury which is not so easily corrected. They should not be left to speculate upon testimony, upon which the court will not rely.

The weight of authority is clearly against this evidence. The English elementary works on evidence do not recognize the practice. (1 *Phil. Ev.* 290. 1 *Stark. Ev.* 54. 3 *Id.* 1707. *Shelf. on Lun.* 67, 73. *Swinburne*, 72.) Judge Cowen disapproved of it in *Norman* v. *Wells*, (*supra.*) Mr. Justice Barculo ruled against it in a case like this, of a grantor. (*Sears* v. *Shafer*, 1 *Barb. S. C. Rep.* 412.) If admissible at all then, it must be so, not upon authority; but from the reason and the nature of the case. But if any advantage can be derived from science and experience, if the subject can be reduced to rules, laws, or system in any degree, the general rule in relation to giving testimony in cases of insanity, should apply. That science is useful and necessary in these cases, no sensible man can doubt. It is not possible that all the writers upon the human understanding, from Locke to the present day, have been wholly ignorant of the subject of which they have so elaborately treated. All judicial and professional experience confirms the wisdom of this general rule, and bears witness to the fallacy of the exception now attempted to be established. What would have been the result if the cases of *Cartwright* v. *Cartwright*, (1 *Phill.* 90,) *Dew* v. *Clarke*, (3 *Addams*, 79,) and *Jackson* v. *King*, (4 *Cowen*, 207,) had been left to the judgment, opinions, conjectures or caprice of illiterate and inexperienced witnesses? If such testi-

mony is received, it must have its legal effect; and I am unable to perceive any satisfactory reason for placing life, liberty and property within its influence.

New trial denied.(*d*)

(*d*) See Note 173 to vol. 3 Phil. Ev. 3d ed. of 1849. The point decided in this case was adopted by the Commissioners of the Code, in their article on Evidence, published after the prevailing opinion was prepared. (*See Code*, § 1704, *sub.* 10, *page* 712.)

